58 P.3d 307 (2002)
114 Wash.App. 459
Mary MULCAHY, Appellant,
v.
FARMERS INSURANCE COMPANY OF WASHINGTON; Farmers Group Inc., d/b/a Farmers Insurance Group of Companies; and Farmers Insurance Exchange, Respondents.
No. 49657-3-I.
Court of Appeals of Washington, Division 1.
November 25, 2002.
Reconsideration Denied January 15, 2003.
Mary Mulcahy, Seattle, WA, for Appellant.
*308 Sidney Robert Snyder, Merrick, Hofstedt & Lindsey, PS, Seattle, WA, for Respondents.

OPINION PUBLISHED IN PART
KENNEDY, J.
This case raises an issue of first impression in Washington  whether an insurer that has issued an automobile insurance policy in Washington, insuring a Washington-licensed automobile owned by a Washington resident under which the insurer is obligated to pay no-fault personal injury protection (PIP) benefits in a specific amount, must nevertheless pay greater PIP-type benefits than provided by the insurance policy (1) where the insured has been injured in an automobile accident in British Columbia, Canada, (2) where the insurer would have been obligated to pay the greater benefits if the insurance policy had been issued in British Columbia in accordance with the laws governing motor-vehicle insurance plans issued in that province, (3) where the insurer has filed a Power of Attorney and Undertaking (PAU) in British Columbia, thereby waiving its right to raise certain defenses as to claims, actions or proceedings brought in British Columbia that it could not raise if the insurance policy had been issued in accordance with the laws of British Columbia, and (4) where the insured files an action against the insurer in Washington, seeking to recover the greater benefits provided by British Columbia law.
Appellant Mary Mulcahy, the insured in this case, was seriously injured in a motor vehicle accident in Vancouver, British Columbia, Canada. At the time of the accident, she was a resident of Seattle, Washington and was driving her Washington-licensed automobile, which was insured by Farmers Insurance Company of Washington under a motor-vehicle insurance policy that was issued in Washington. The policy provided Ms. Mulcahy with PIP medical benefits of $10,000, which Farmers paid. Ms. Mulcahy's actual medical expenses for her injuries sustained in the accident were much higher than the PIP benefits provided under her insurance policy.
Ms. Mulcahy sued the at-fault driver, a Canadian citizen who was insured by the Insurance Corporation of British Columbia, in British Columbia. She eventually settled her claim for $375,000 (Canadian). But ICBC deducted $150,000 (Canadian) from her settlement proceeds, taking the position that Ms. Mulcahy must collect this amount from her own insurer  in that Farmers Insurance Group had filed a PAU in British Columbia by which it agreed to be bound by the reciprocal laws that govern motor vehicle insurance claims in Canada. Farmers refused to pay Ms. Mulcahy $150,000 (Canadian). She thereupon filed virtually identical actions in British Columbia and Washington, seeking to enforce her rights under the PAU.
A judge of the King County Superior Court subsequently granted Farmers' motion for summary judgment, and entered an order dismissing Ms. Mulcahy's action in Washington. Ms. Mulcahy appealed that order to this court. Farmers moved in British Columbia for dismissal of Ms. Mulcahy's suit there, contending that Ms. Mulcahy was estopped from litigating the issue in British Columbia, under the doctrine of res judicata. The British Columbia trial court denied that motion. Farmers sought and was granted leave to appeal that ruling in the British Columbia Court of Appeal. That appeal is now pending.
We affirm the King County Superior Court's summary judgment of dismissal. Based on the plain language of the PAU, Farmers agreed to be bound by British Columbia motor vehicle insurance law for purposes of actions brought against it in British Columbia, but did not agree to be so bound for purposes of actions brought against it in Washington. In so ruling, we do not purport to resolve the merits of Ms. Mulcahy's action in British Columbia. Indeed, the PAU operates as a contract between Farmers and the government of British Columbia, so that Farmers' obligations to Ms. Mulcahy under the PAU and British Columbia law are better determined by the courts in British Columbia than by us.[1]

*309 FACTS
On May 7, 1994, the appellant Mary Mulcahy was severely injured in an automobile accident in Vancouver, British Columbia, Canada. The accident was entirely the fault of the driver of the other vehicle involved in the accident, a Canadian citizen who was insured by the Insurance Corporation of British Columbia (ICBC). Ms. Mulcahy resided in Seattle at the time of the accident. She was driving her Washington-licensed automobile, which was insured under an automobile insurance policy issued in Washington by Farmers Insurance Company of Washington.
Ms. Mulcahy's policy provided no-fault personal injury protection (PIP) coverage. The policy provided PIP medical benefits as follows: "We will pay for all reasonable and necessary medical and hospital expenses incurred for services furnished within one year from the date of the accident which caused the injury.... We will not pay more than $10,000 for each insured person." Clerk's Papers at 476. On June 4, 1994, Ms. Mulcahy made a claim for PIP benefits under her policy, and Farmers paid her medical bills as they were incurred, until April 1995, when the $10,000 limit was reached. Ms. Mulcahy's actual medical expenses stemming from her injuries far exceeded that amount however, so she wrote a letter to Farmers asking what she should do about her unpaid medical bills. Farmers wrote back advising Ms. Mulcahy to contact ICBC. Although Farmers had filed a PAU in British Columbia in 1986, Farmers did not advise Ms. Mulcahy of this fact. Farmers wrote to ICBC, requesting ICBC to protect Farmers' right to recover the $10,000 it had paid in PIP benefits, at such time as Ms. Mulcahy's pending claim against the at-fault driver might be resolved.
In 1995, Ms. Mulcahy filed a lawsuit in British Columbia against the at-fault tortfeasor, to recover for injuries and damages she sustained in the May 1994 accident. During the four years that lawsuit was pending, Ms. Mulcahy's health deteriorated, she was unable to support herself, and in February 1996, she lost her home in Seattle. She lived for a time in a transitional house for homeless women. After that, she was reduced to living in her automobile.
In February 1997, Ms. Mulcahy wrote a letter to Washington's Insurance Commissioner, asking whether Farmers or ICBC was required to pay no-fault benefits beyond the $10,000 limit in PIP benefits payable under her Farmers policy. The Insurance Commissioner forwarded a copy of the letter to Farmers, which stated in a letter of reply that although it had filed a PAU in Canada on August 4, 1986, the PAU did not operate to increase Ms. Mulcahy's PIP benefits provided under her insurance policy.
In November 1998, British Columbia Ombudsman Officer Elizabeth Nichols suggested that Ms. Mulcahy, who was homeless and destitute, write a hardship letter to ICBC. Ms. Mulcahy did so. The following month, she received a letter from Mr. Alex van Grondelle stating that ICBC was not responsible for paying what is known under British Columbia automobile insurance law as "Part 7 benefits." Part 7 benefits arise under Part 7 of a regulation issued under British Columbia's Insurance (Motor Vehicle) Act, 447/83 B.C. Reg. Part 7 Benefits §§ 78-104. Part 7 benefits are no-fault benefits similar to PIP benefits. Insurers that are bound by British Columbia motor-vehicle insurance statutes and regulations must provide coverage for medical, rehabilitative and disability pay, up to a maximum of $150,000 (Canadian). Mr. van Grondelle informed Ms. Mulcahy that her own insurer, Farmers Insurance Company of Washington, was responsible to pay for her Part 7 benefits because Farmers had filed a PAU in British Columbia agreeing to be bound by British Columbia's reciprocal insurance laws.
Ms. Mulcahy sent a copy of Mr. van Grondelle's letter to Farmers, which denied having any such obligation.
In December 1999, Ms. Mulcahy and ICBC mediated her claim against the at-fault driver. As a result of the mediation, Ms. Mulcahy settled her claim for $375,000 (Canadian), and ICBC agreed to indemnify Ms. Mulcahy from obligation for the $10,000 ($15,000 Canadian) that was paid by Farmers for her PIP benefits. On December 13, *310 1999, Mr. Peter Collins, defense attorney for ICBC, informed Ms. Mulcahy that ICBC had the right to deduct $150,000 (Canadian) from her $375,000 (Canadian) settlement, under § 25 of British Columbia's Insurance (Motor Vehicle) Act, R.S.B.C.1996, Chapter 231 (formerly Chapter 204), and that she must look to her own insurer for the difference between the amount of her settlement and the net settlement proceeds. Accordingly, when ICBC paid Ms. Mulcahy her settlement proceeds in January 2000, it paid her only $225,000 (Canadian).
On March 23, 2000, Ms. Mulcahy filed an action against Farmers in British Columbia, seeking to recover $150,000 (Canadian) under the PAU and the reciprocal provisions of British Columbia insurance law. On May 2, 2000, two days before the expiration of Washington's six-year statute of limitations for bringing a first-party lawsuit under a policy of insurance issued in Washington, Ms. Mulcahy filed an action against Farmers in King County Superior Court in Seattle seeking to recover $150,000 (Canadian) under the PAU, and also seeking to recover damages for extra-contractual bad faith and for violation of the Consumer Protection Act (CPA).
Ms. Mulcahy, who is represented by counsel in the British Columbia action, but who is pro se in the Washington action, rather naively expected that the Washington action would lie quiescent during the litigation of the action in British Columbia. But Farmers aggressively pursued the Washington litigation. After various procedural skirmishes relating to other issues that we will discuss in the unpublished portion of this opinion, Farmers brought a motion for summary judgment in King County Superior Court, seeking dismissal of Ms. Mulcahy's action, in its entirety, with prejudice. The trial court granted this motion on November 16, 2001. Ms. Mulcahy timely filed the instant appeal.
Farmers promptly moved in the British Columbia trial court for a declaration declining jurisdiction of the British Columbia action, relying on the doctrines of comity, forum non conveniens, res judicata and abuse of process. The British Columbia trial judge considered only whether Ms. Mulcahy's claim was estopped by the application of res judicata, and decided that it was not, the court being unable to determine from the record whether the issue of Farmers' liability under the PAU was disposed of in the King County Superior Court on the same merits as it would have been had the issue been determined under the laws of British Columbia. Farmers then sought leave from the British Columbia Court of Appeal to appeal the decision of the British Columbia trial court, contending that the King County Superior Court did apply British Columbia law in dismissing the portion of Ms. Mulcahy's action that is virtually identical to the action in British Columbia.
The British Columbia Court of Appeal granted Farmers leave to appeal the decision of the British Columbia trial court, by a written decision entered on November 7, 2002  the day before the parties argued the instant appeal before the undersigned judges of this appellate court.[2] Thus, that appeal is now pending before the British Columbia Court of Appeal.

ANALYSIS AND DECISION
Standard of Review
We review a trial court's order granting summary judgment de novo, performing the same inquiry on the same record that was before the trial court. See, e.g., Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
We start the analysis with a description of British Columbia motor vehicle insurance law. In Diotte v. Insurance Corp. of British Columbia, 2000 BCSC 1779, 9 M.V.R. (4th) 210, 28 C.C.L.I.3d 125, Justice Cohen of the British Columbia Supreme Court provided the following explanation:

*311 The B.C. legislature has created a scheme whereby in certain actions in B.C., arising out of accidents in B.C., extraprovincial and other foreign insurers may be prevented from relying on contractual limits which are less than those required by the law of B.C. As a result, some extraprovincial and other foreign insurers may be required to pay their insured higher benefits than are prescribed in a contract of insurance. This situation arises under B.C. legislation because (a) it is a condition of a license issued in B.C. to carry on business in B.C.; (b) there is reciprocity legislation; or (c), the insurer has filed a PAU. The legislation which makes up this scheme includes the Insurance Act, the Insurance (Motor Vehicle) Act, and the Financial Institutions Act, R.S.B.C.1996, c. 141.
Diotte, 28 C.C.L.I.3d at 130. Farmers states that it is not licensed to carry on business in British Columbia. Accordingly, Ms. Mulcahy relies on the fact that Farmers filed a PAU in British Columbia in 1986.
As stated in Diotte, an insurer that has filed a PAU has agreed that "for accidents in B.C., it will compensate its insured according to the same terms that B.C. residents are compensated by their insurers." Id. Section 134(9) of the Insurance Act provides what a PAU must contain, and the one filed by Farmers essentially follows the statutory form. The PAU filed by Farmers reads as follows:

POWER OF ATTORNEY AND UNDERTAKING
(denoting compliance with minimum coverage requirements and facilitating acceptance of service)
FARMERS INSURANCE GROUP OF COMPANIES the head office of which is in the City of Los Angeles  1620 South Maple  90640, in the State of California, In Country of United States of America, hereby, with respect to an action or proceeding against it or its insured, or its insured and another or others, arising out of a motor-vehicle accident in any of the respective Provinces or Territories, appoints severally the Superintendents of Insurance* of British Columbia, Alberta, Saskatchewan, Manitoba, Ontario, New Brunswick, Nova Scotia, Prince Edward Island, Newfoundland, Quebec, the Yukon Territory and the Northwest Territories, to do and execute all or any of the following acts, deeds, and things, that is to say: To accept service of notice or process on its behalf.
*Superintendent of Insurance means the Superintendent of Insurance or any other provincial or territorial official or Public Body authorized by law or designated by his or her government to accept such service of notice or process.
FARMERS INSURANCE GROUP OF COMPANIES aforesaid hereby undertakes:
A. To appear in any action or proceeding against it or its insured in any Province or Territory in which such action has been instituted and of which it has knowledge:
B. That upon receipt from any of the officials aforesaid of such notice or process in respect of its insured, or in respect of its insured and another or others, it will forthwith cause the notice or process to be personally served upon the insured:
C. Not to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up if the contract has been entered into in, and in accordance with the laws relating to motor vehicle liability insurance contracts or plan of automobile insurance of the Province or Territory of Canada in which such action or proceeding may be instituted, and to satisfy any final judgment rendered against it or its insured by a Court in such Province or Territory, in the claim, action or proceeding, in respect of any kind or class of coverage provided under the contract or plan and in respect of any kind or class of coverage required by law to be provided under a plan or contract of automobile insurance entered into in such *312 Province or Territory of Canada up to the greater of
(a) The amounts and limits for that kind or class of coverage or coverages provided in the contract or plan or
(b) The minimum for that kind or class of coverage or coverages required by law to be provided under the plan or contracts of automobile insurance entered into in such Province or Territory of Canada, exclusive of interest and costs and subject to such minimum amounts and limits as may be required by the laws of the Province or Territory.
D. That it will not issue Canada Non-Resident Inter-Province Motor-Vehicle Liability Insurance Cards to persona other than those who are non-residents of Canada and who are insured with it under a contract of motor-vehicle liability insurance.
IN WITNESS WHEREOF the said Company has caused its corporate seal to be affixed hereto duly attested by the hands of its proper officers in that behalf at the City of Los Angeles, in the State of California, this 4th day of August 1986, A. D.
[Seal affixed] [Signed, signature illegible]
Clerk's Papers at 488.
We again quote Justice Cohen in Diotte:
The law in this province regarding the legal effect of filing a PAU appears to be well settled. Where a foreign insurer has filed a PAU with the Superintendent, the foreign insurer is bound by the terms of the PAU from setting up a defence to a claim, action or proceeding initiated in this province, which might not be set up if the contract of insurance had been issued in this province.
Diotte, 28 C.C.L.I. at 132 (emphasis added). Justice Cohen went on to explain that the effect of the PAU is to require the foreign insurer to cover claims for Part 7 benefits, as well as for liability of its insured, where the language of the PAU includes (as the one before us does, see paragraph C of the PAU filed by Farmers) the phrase "in respect of any kind or class of coverage ... required by law to be provided ... in such Province or Territory of Canada[.]" Id. at 133.
Justice Cohen wrote in Diotte that, "[b]ecause a foreign insurance company cannot be bound by B.C. legislation, it seems that the PAU, by virtue of its power to bind a foreign insurer is more contractual in nature than statutory." Id. at 135. In sum, a PAU is a promise made by the insurer to "(1) every person with whom [the insurer] has a contract of insurance; (2) every person who qualifies as an insured under a contract of insurance between [the insurer] and another party[;] ... (3) the Superintendent; and (4) all other insurers who carry on business in B.C." Id. at 135-36. Thus, in Diotte, Justice Cohen held that the defendant Progressive Specialty Insurance Company, an insurer incorporated in the State of Florida that was not licensed to do business in British Columbia, was liable to pay Part 7 benefits to plaintiffs who were passengers injured in an automobile accident in British Columbia, even though the vehicle in which they were riding had Alaska license plates, and had been insured in Alaska under a policy that did not provide for no-fault Part 7 benefits (or apparently for anything akin thereto, such PIP benefits), in that Progressive had filed a PAU in British Columbia (albeit after the accident in question occurred). By way of summary of Justice Cohen's rulings: Defendant ICBC was not required to pay Part 7 benefits to the plaintiffs; defendant Progressive was required to do so, retroactively, by virtue of the PAU, however, and not by virtue of its own contract of insurance issued in Alaska. Id. at 140.
Although Ms. Mulcahy may be able to enforce her rights under the PAU in British Columbia, it is not our task to determine whether she can do so, there. Rather, it is our task to determine whether she can do so, here, in the State of Washington. Surprisingly, since we share a common border with British Columbia, this issue has not arisen in Washington before now. The issue has arisen in at least three other jurisdictions, however, Michigan, Ohio, and New York. The reasoning of those courts is not binding on us, but may have persuasive value.
*313 In Mindell v. Travelers Indem. Co., 46 A.D.2d 263, 361 N.Y.S.2d 777 (1974) the appellate division of the New York Supreme Court rejected the notion that a PAU filed by the insurer in Canada was enforceable in the courts of New York. There, the plaintiff was injured as the result of a one-car crash in Ontario, Canada, while riding as a passenger in a vehicle that was insured in the state of New York. Ontario required higher policy limits for liability insurance than did New York. The passenger did not wish to sue in Ontario, however, due to a host-guest statute in Ontario that was adverse to her claim. Thus, she sued the insured driver of the vehicle in New York, where no host-guest statute was in effect, hoping to obtain the benefits of the higher limits of liability coverage required under the laws of Ontario by virtue of the PAU that the insurer had filed in order to carry on business in Canada. The majority ruling rejecting her claim to higher limits was based on the language of the PAU, which, similarly to the one now before us, provided that the insurer undertook
[n]ot to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up if the contract had been entered into in, and in accordance with the law relating to motor-vehicle liability insurance contracts of the Province or Territory of Canada in which such action or proceeding may be instituted [.]
46 A.D.2d at 265-66, 361 N.Y.S.2d 777. The Mindell majority found it clear that the provision quoted "refers only to a claim, action or proceeding prosecuted in a Canadian province or territory, and that the insurer's agreement not to set up certain defenses ... extended only to such actions." Id. at 266, 361 N.Y.S.2d 777. A dissenting judge disagreed, relying in part on the public policy that gave rise to a recently enacted New York Statute that required insurers to provide liability coverage "`when a motor vehicle covered by such policy is used or operated in any other state or in any Canadian province ... at least in the minimum amount required for such vehicle by the laws of such other state or Canadian province.'" 46 A.D.2d at 268, 361 N.Y.S.2d 777 (Cardamone, J., dissenting, quoting Insurance Law, § 672(5), a New York statute that became effective after the date of the accident at issue).[3]
Two districts of the Ohio Court of Appeals have reached conflicting results in addressing the same issue. In the earlier case, Fiste v. Atlantic Mut. Ins. Co., 94 Ohio App.3d 165, 640 N.E.2d 551 (1994), the plaintiff was injured when his vehicle was struck head on by a drunken driver in Ontario, Canada. The at-fault driver did not have sufficient liability coverage to pay for the plaintiff's medical expenses arising from the crash, so the plaintiff turned to his own insurance carrier, which paid him $5,000 for medical expenses in accordance with the terms of his automobile policy issued in Ohio. The plaintiff sought the higher $25,000 limits for medical payments required by Ontario insurance laws, based in part on the clause in his policy that provided him with higher liability insurance coverage while driving in Canada  which plaintiff argued also extended to his no-fault coverage for medical expenses  and based in part on the PAU that his carrier had filed in Canada. The Tenth District of the Court of Appeals rejected both arguments. The court held that the promise to provide higher liability coverage applied only if the insured was at fault in an accident occurring in Canada. And the PAU applied only to causes of action arising in Canada and litigated in the Canadian courts. 94 Ohio App.3d at 169-70, 640 N.E.2d 551. A dissenting judge disagreed, opining (1) that insurance policies ought to be construed the way a typical purchaser of insurance would construe them, and a typical purchaser would believe, based on the language in the policy indicating that he could drive legally in Canada because he carried sufficient insurance to *314 meet Canada's higher coverage requirements for all types of insurance, and (2) because the insurer had by virtue of the PAU promised that its insured drivers would be covered by the types and amounts of insurance required by Canadian law. 94 Ohio App.3d at 171-73, 640 N.E.2d 551 (Tyack, J., dissenting).
Two years later, the Third District of the Ohio Court of Appeals rejected the reasoning of the Fiste majority, on both grounds, in Motorists Mut. Ins. Co. v. Howard, 110 Ohio App.3d 709, 675 N.E.2d 51 (1996). There, Howard and his passenger were riding in Howard's Ohio-insured vehicle in Ontario, Canada, when they were struck by an at-fault Canadian driver. Both Howard and his passenger were seriously injured, and unable to return to their respective employments. Motorists Mutual voluntarily began paying Howard and his passenger disability payments in accord with Ontario's no-fault insurance laws, and continued paying for three years. Then, Motorists Mutual decided that it was not bound by the provisions of Ontario law requiring such payments, and brought suit in Ohio seeking a declaratory judgment to that effect  and also seeking reimbursement of the disability payments theretofore paid. Both the trial court and the appellate court rejected the insurer's claims. The Ohio Supreme Court had issued an opinion in Kurent v. Farmers Ins. of Columbus, 62 Ohio St.3d 242, 581 N.E.2d 533 (1991) holding that where an Ohio-insured motorist was injured in an accident occurring in Michigan that was the fault of an uninsured tortfeasor, Michigan's no-fault insurance law, rather than Ohio's insurance law, governed the right of the Ohio insured to recover uninsured motorist coverage under his Ohio-issued automobile insurance policy. Kurent, 62 Ohio St.3d at 246, 581 N.E.2d 533, cited and discussed in Motorists Mutual, 110 Ohio App.3d at 711-12, 675 N.E.2d 51. The Motorists Mutual court reasoned that by that same token, Ontario's no-fault insurance law ought to apply to the right of Howard and his passenger to collect disability pay for their injuries arising out of the accident in Ontario. This was particularly so in that Howard's policy stated that if an auto accident to which the policy applied occurred in any state or province other than the one in which the insured vehicle was principally garaged, the policy would be construed in accord with the required minimum "amounts and types" of coverage required by compulsory insurance laws of such state or province. Although this clause was found only in the section of the policy governing liability coverage, the court ruled that it should be read more broadly to guarantee Howard the required minimum amounts and types of coverage he needed in order to drive legally in Ontario. 110 Ohio App.3d at 713, 675 N.E.2d 51.
Moreover, Motorists Mutual had filed a PAU waiving such defenses as might not be set up if the contract had been entered into in and in accordance with the laws of Ontario. The court rejected the notion that this clause was enforceable only in Ontario, notwithstanding that the PAU waived such defenses in the "Province or Territory of Canada in which such action or proceeding may be instituted[.]" The court said: "This agreement does not state as a condition precedent to enforcement that an individual must institute an action in Canada, and, indeed, the plain language states that an action may be instituted in Canada [not that it must be]." 110 Ohio App.3d at 714, 675 N.E.2d 51.
Finally, the Third District expressly disagreed with the Tenth District's decision in Fiste, pointing out that the Fiste court failed to take Kurent into account. Id.
The most recent decision dealing with the issue before us is Perry v. Sied, 461 Mich. 680, 611 N.W.2d 516 (2000). There, two Michigan residents were traveling in their respective automobiles in Ontario, Canada, when one of them, defendant Sied, rear-ended the other, plaintiff Perry. Perry sued Sied in Michigan, seeking the higher policy limits required by Ontario insurance law on grounds that Sied's insurer, Auto Club Insurance Association had filed a PAU in Canada. Auto Club was allowed to intervene in the action to protect its rights. Plaintiff Perry moved for a declaratory judgment that the PAU applied, so that she was entitled to collect the $200,000 (Canadian) minimum coverage for her injuries as required by Ontario insurance law, rather than the $20,000 maximum coverage provided by Sied's Michigan-issued *315 automobile policy. The parties agreed to arbitrate the amount of Perry's damages before proceeding with the coverage issue. An arbitration panel awarded Perry $95,000 for her injuries, after which she renewed her motion for declaratory judgment.
Citing an earlier decision by the Court of Appeals of Michigan, Auto Club Ins. Ass'n v. Lozanis, 215 Mich.App. 415, 546 N.W.2d 648 (1996) (holding the PAU to be enforceable in Michigan on similar reasoning to that of the Third Circuit Court of Appeals of Ohio in Motorists Mutual), the trial court ruled in plaintiff Perry's favor. The Michigan Court of Appeals then affirmed the trial court in an unpublished opinion. The Michigan Supreme Court reversed the trial court and the Court of Appeals, however, stating the issue to be whether the PAU applies when a lawsuit could have been filed in Canada, but was instead filed in Michigan, and concluding that by filing a PAU in a province of Canada, an insurer agrees to be bound by the laws of that province, when sued in that province, not when sued in any forum whatsoever. 461 Mich. at 689, 611 N.W.2d 516. In so ruling, the Perry court rejected the premise that the word "may" in the third undertaking of the PAU, wherein the insurer agreed not to set up any defenses it could not set up if the contract had been entered into in and in accordance with the law relating to the motor-vehicle liability insurance contracts of the province or territory of Canada "in which such action or proceedings may be instituted" was merely permissive. Rather than implying permission, the court concluded that
the use of the word "may" in context reflects the disjunctive nature of the previous phrase in the PAU. Hence use of "may" in this context implies that the PAU applies in whatever province or territory the suit is brought, not that the [insurer] waives defenses in any forum in which suit could be brought. This is consistent with the last portion of the cited language wherein the [insurer] promises to satisfy any judgment issued by a Canadian court on the claim. This language certainly suggests a Canadian lawsuit.
461 Mich. at 689, 611 N.W.2d 516.
As for the contrary decision of the Michigan Court of Appeals in Lozanis, the Supreme Court concluded that Lozanis reached the right result, but only
because Lozanis did institute a lawsuit in Canada making the PAU applicable. The Canadian lawsuit was, however, enjoined at the [insurer's] request and the matter was resolved in a state court. Thus, the state court lawsuit was a substitute for the Canadian lawsuit and the PAU did apply. Indeed, any other resolution would have allowed the [insurer] to avoid its obligations under the PAU. However, we disagree with the Lozanis court to the extent that it suggested that the forum of the lawsuit did not affect whether the PAU applied.
Id. at 690, 611 N.W.2d 516.
Finally, the Perry court observed that Canadian courts also understand PAUs to apply on the basis of where an action is litigated. Among several Canadian cases cited for this observation is Marchand v. Alberta Motor Ass'n Ins. Co., 47 ACWS3d 714 (B.C.Ct.App., 1994). There, two parties from Alberta had an automobile accident in British Columbia, and one sued the other in British Columbia, so as to take advantage of the higher coverage required by British Columbia insurance law, as compared with Alberta insurance law. The at-fault party's insurer had filed a PAU in British Columbia. The British Columbia Court of Appeal acknowledged that the provisions of the PAU would have been ineffective, despite the fact that the accident occurred in British Columbia, if the action had been brought in Alberta. Perry, 461 Mich. at 691-92, 611 N.W.2d 516, citing Marchand, and also citing Kent, No-fault benefits in British Columbia: Must out-of-province auto insurers pay the same as ICBC?, 13 Can. J. Ins. L. 39, 43 (1995) ("It will be recalled that both [a statutory provision] and the PAU apply only if the lawsuit is brought in B.C.").
We find the reasoning of the Michigan Supreme Court in Perry to be more persuasive than that of the Third District of the Ohio Court of Appeals in Motorists Mutual, with respect to the applicability of PAUs filed in Canada to actions brought in *316 Washington courts. We hold that by filing its PAU in British Columbia, Farmers did not agree to be bound by the insurance laws of British Columbia when it is sued in Washington by a Washington resident driving a Washington-licensed vehicle that was insured by a policy of automobile insurance issued in Washington that meets the requirement of Washington law, merely because its insured is involved in a motor-vehicle accident that occurs in British Columbia. Rather, by filing the PAU, Farmers agreed to be bound by British Columbia motor vehicle insurance law when it is sued in British Columbia following an automobile accident involving one of its insureds that occurs in British Columbia.
We do not decide whether we would follow the Michigan Supreme Court's reasoning with regard to Lozanis, however. We do not need to reach that issue because Ms. Mulcahy still has a viable lawsuit in British Columbia  Farmers having thus far been unsuccessful in obtaining dismissal of Ms. Mulcahy's lawsuit in British Columbia. For such assistance as it may be to the British Columbia Court of Appeal in reviewing its trial court's order in the appeal now pending, we emphasize that we do not decide the question of the applicability of the PAU to Ms. Mulcahy's lawsuit there.[4] We see the PAU as a contract between Farmers and the government of British Columbia that is best construed by the courts in British Columbia, rather than by us, when it comes to the merits of the claim that Ms. Mulcahy is pursuing against Farmers in the British Columbia courts.
We are not persuaded that the clause found in the liability section, and only in that section of Ms. Mulcahy's policy, provides her with Part 7 benefits under British Columbia law, though we believe that it would have provided her with additional liability coverage if she had been the at-fault driver in the accident that occurred in British Columbia, to the extent that her liability coverage might be less than the minimum liability coverage required in British Columbia. The clause found in Ms. Mulcahy's liability coverage provisions does not contain the same "required minimum amounts and types of coverage" found in the Ohio policy at issue in Motorists Mutual, so that it is not susceptible to the same kind of broad reading that a typical insured might give to a clause having that language, even though found only in the liability section of a policy.[5]
We affirm the summary judgment granted to Farmers by the King County Superior Court, for the reasons stated in this opinion. Whatever the effect of the PAU for purposes of actions commenced in British Columbia may be, the PAU does not operate as a waiver of Farmers' rights under the policy of insurance it issued in Washington, for purposes of actions commenced by its insured in this state.
A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.
WE CONCUR: COX, A.C.J., and BAKER, J.
NOTES
[1] Our opinion with respect to the remaining issues raised in this appeal lacks precedential value, and will treated in the unpublished portion of this opinion.
[2] The British Columbia Court of Appeal granted Ms. Mulcahy leave to proceed in forma pauperis in defending against the appeal. Because Ms. Mulcahy was required to expend the bulk of her ICBC settlement proceeds for medical expenses arising from the automobile accident, she is barely able to make ends meet, and is once again homeless.
[3] Ms. Mulcahy's policy contains a clause that provides her with such additional liability coverage as might be required by compulsory financial responsibility laws in Canada or other states than Washington in which she might become liable based on ownership or use of the vehicle in those jurisdictions. The sections of the policy dealing with Underinsured Motorist and no-fault personal injury protection contain no such promises, however.
[4] We do not believe that the King County Superior Court decided the merits of Ms. Mulcahy's claim that is pending in British Columbia. To the extent that it may have done so, however, it erred, and we reverse. Our affirmance is based on the trial court's ruling that by filing the PAU in British Columbia, Farmers did not agree to be bound by the laws of British Columbia when being sued in Washington.
[5] The clause in the liability section of Ms. Mulcahy's policy reads: "An insured person may become subject to the financial responsibility law, compulsory insurance law or similar law of another state or in Canada. This can happen because of the ownership, maintenance or use of your insured car when you travel outside of Washington. We will interpret this policy to provide any broader coverage required by those laws, except to the extent that other liability insurance applies. No person may collect more than once for the same elements of loss." Clerk's Papers at 475.